UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
CHRISTA CARTER-MARKS,

                              Plaintiff,

        -against-

ALSTOM TRANSPORT USA INC, *et al.*,

                           Defendants.
--------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

23-CV-9449
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

    Plaintiff Christa Carter-Marks brings this action against Alstom Transport USA Inc ("Alstom"), as well as Joseph Ragusa, Timothy Bunda, an individual Plaintiff refers to as "Chris Unknown,"[1] Jeffrey Sands, and David Mass, in their individual and official capacities as employees of Alstom (collectively, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); 42 U.S.C. § 1985; the Americans with Disabilities Act 42 U.S.C. §§ 12101, *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973; 29 U.S.C. § 701 *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"); New York City Human Rights Law; N.Y.C. Admin Code § 8-101 *et seq.* ("NYCHRL"); and various common law tort causes of action.  *See generally* Dkt. No. 1.

    Currently pending before the Court is Defendants' motion for summary judgment.  *See generally* Dkt. No. 43.[2]  For the reasons set forth below, Defendants' motion is granted.

---

[1]  Defendants identify the individual as "Chris Dalby" in their motion.  *See, e.g.*, Dkt. No. 43-1 at 1.  The name on the docket, however, was never corrected to reflect the individual's actual name.  The Court will thus refer to the individual as his name appears on the docket.

[2]  On March 12, 2024, the parties consented to Magistrate Judge jurisdiction before the undersigned.  *See* Dkt. Nos. 17-18.

## I.    Background

### A.    Factual Allegations

#### i.    Plaintiff's Employment History

The following facts, taken from the parties' pleadings, Local Civil Rule 56.1 ("Rule 56.1")

statements, and relevant portions of the record, are undisputed unless otherwise noted.[3]

On or about January 10, 2022, Alstom hired Plaintiff, an African American woman (Dkt.

No. 1 ¶¶ 9, 13) as "a Human Resources Business Partner." Dkt. No. 45-1 ¶¶ 1-2.  Plaintiff states

she worked at both John F. Kennedy Airport ("JFK") and Newark Airport.  Dkt. No. 45-1 ¶¶ 1-2.

Plaintiff's "direct Human Resources" manager, who was located in the Newark office, was

Defendant Timothy Bunda; her "overall supervisor of the JFK site" was Defendant David Mass.

---

[3] "Unless otherwise noted, a standalone citation to a party's Local Rule 56.1 statement denotes that the Court has deemed the underlying factual allegation undisputed."  *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, No. 12-CV-6383 (PKC) (SIL), 2025 WL 948111, at *1 (E.D.N.Y. Mar. 28, 2025). "Any citation to a party's Local Rule 56.1 statement incorporates by reference the documents cited therein." *Id.*  "Where relevant, the Court may cite directly to an underlying document," but "where either party (i) admits or (ii) denies without citing to admissible evidence certain of the facts alleged in the other's 56.1 statement, the Court may deem any such facts undisputed."  *Id.*  (citing Loc. Civ. R. 56.1(c)-(d); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence.  Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything." (emphasis in original))); *see also Ward v. Nassau Cnty.*, No. 15-CV-4309 (GRB) (LGD), 2023 WL 5417329, at *1 (E.D.N.Y. Aug. 22, 2023) ("Merely denying certain statements in the moving party's statement of undisputed material facts without stating the factual basis for such denial and without disclosing where in the record is the evidence relied upon in making such denial does not constitute a 'separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried'—as is required to controvert the moving party's statement of undisputed material facts." (citing *Covelli v. Nat'l Fuel Gas Distrib. Corp.*, 2001 WL 1823584, at *1 (W.D.N.Y. Dec. 6, 2001), *aff'd, Covelli v. Nat'l Gas Distrib. Corp.*, 49 F. App'x 356 (2d Cir. 2002))); *Su v. Top Notch Home Designs Corp.*, No. 20-CV-5087 (GRB) (JMW), 2023 WL 8878553, at *3 (E.D.N.Y. Dec. 22, 2023) (same).  Where "the record does not support the assertions in a 56.1 statement, those assertions should be disregarded, and the record viewed independently" because "a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001); *Cemetery Workers Supplemental Pension Fund by Alladeen v. Lutheran All Faiths Cemetery*, No. 19-CV-6897 (RPK) (RML), 2021 WL 7908022, at *1 (E.D.N.Y. Sept. 9, 2021) (citation and quotation marks omitted) ("Where [] a party opposing summary judgment fails to properly controvert a movant's statement of material fact, such statement will be deemed admitted for the purposes of the motion." ).

*Id.* ¶ 4.

One of Plaintiff's assigned responsibilities was "to access a third-party platform used for managing random drug and alcohol testing," where she "was required to retrieve the list of employees selected for random testing." *Id.* ¶ 5. Plaintiff would then prepare "pre-drafted notification letters," including "the selected employee's and their direct manager's name," which were then "placed in sealed envelopes." *Id.* The selected employee's direct managers were then notified by email, phone call, text message, or in person, "informing them that their employee had been selected for testing." *Id.*

The parties sharply dispute the nature and occurrences of many of Plaintiff's allegations in the Complaint.

### ii.    Plaintiff's Allegations During Her Employment

### a.    Plaintiff's Assertions[4]

During her employment, Plaintiff alleges that she was subject to discrimination due to her race, sex, and alleged disability. Dkt. No. 45-1 at ¶ 6.

On two occasions, Plaintiff asserts that there were instances of inappropriate sexual comments and behavior. Plaintiff alleges that "in or around early 2022," an employee named Ramon Santiago made "inappropriate sexual comments to her in front of [Defendant] Mass." Dkt. No. 45-1 ¶ 7a;[5] Dkt. No. 1 ¶ 24. Plaintiff provided "the working title of six employees who were present when this statement was made," but otherwise concedes that she "failed to provide any

---

[4] As stated below, Defendants deny the allegations made by Plaintiff in her Rule 56.1 Counter-Statement of Facts, asserting that the majority of them are not supported by admissible evidence or otherwise rest entirely on the contentions as raised in the Complaint. *See generally* Dkt. No. 49. Where relevant and appropriate, the details of Defendants' disputes are recounted, as well as the limited stipulations to Plaintiff's claims.

[5] The Court references paragraphs and subheadings as set forth in the parties' respective Local Rule 56.1 Statements.

deposition testimony from any of these employees or affidavits as to what they saw or heard." Dkt. No. 45-1 ¶ 7a.  Defendants dispute the occurrence of any comments.  Dkt. No. 49 ¶ 7a.  In 2022, Plaintiff also asserts there was an incident with another unnamed and unidentified employee where he "rubbed against her while she was entering a building."  Dkt. No. 45-1 ¶ 7f.  Defendants likewise dispute the occurrence of the event and state that Plaintiff "never reported the alleged incident."  Dkt. No. 49 ¶ 7f.

Plaintiff alleges various incidents where employees purportedly violated masking requirements and policies, enacted during the Covid-19 pandemic, while attempting to intimidate her.  Plaintiff claims that "in January of 2022," Defendant Ragusa "came within inches of her face without a mask."  Dkt. No. 45-1 ¶ 7g.  Plaintiff states that she complained about the incident to Defendant Bunda and another employee, but that the issue was never addressed.  *Id.*  Defendants deny the occurrence of such an encounter, which Mr. Bunda does not recall happening.  Dkt. No. 49 ¶ 7g.  Plaintiff also states that Mr. Mass would frequently not wear a mask and come within close quarters in an intimidating manner when interacting with Plaintiff, despite prior contractions of the illness.  *See, e.g.*, Dkt. No. 45-1 ¶ 7q (detailing incident on March 24, 2022); *id.* ¶ 7r (detailing incident on March 28, 2022); *id.* ¶ 7bb (detailing another undated incident); *id.* ¶ 7gg (detailing incident in April of 2023).  Defendants dispute these interactions and counter that "New York State no longer required that masks be worn in the workplace as of February 10, 2022."  Dkt. No. 49 ¶ 7h.

Many of Plaintiff's allegations stem from experiences with Defendant Mass.  For example, Plaintiff asserts that on January 27, 2022, she handled a harassment complaint from another employee concerning Mr. Mass's conduct.  Dkt. No. 45-1 ¶ 7i.  Plaintiff claims that Mr. Mass "refused to cooperate" during her investigation.  *Id.* ¶ 7j.  When she informed Mr. Bunda of Mr.

Mass's conduct, he explained that "Mr. Mass was angry because he had to justify his management style to [Plaintiff] and [Mr. Mass] is not used to having people question him or his decisions." *Id.* ¶ 7k. Plaintiff further alleges that Mr. Mass "tried on multiple occasions to improperly influence [Plaintiff] in her independent determination of both the complaints." *Id.* ¶ 7l. Alleged statements by Mr. Mass include that he "did not want this to look like retaliation towards the employee for her complaint against him," and that "he could not understand why [the complainant] brought the complaint against him." *Id.* Moreover, when Plaintiff refused to tell him more about the investigation, he "got irate." *Id.* According to Plaintiff, Mr. Mass "was very upset that termination was not recommended by [Plaintiff]," causing him to "storm[] into her office and berate[] her about her determination and eventually terminated [the complainant] in July 2022." *Id.* ¶ 7m.

In March of 2022, Plaintiff alleges that Mr. Mass "attempted to change [her] schedule which had been set by her manager, [Defendant] Bunda." Dkt. No. 45-1 ¶ 7o. Mr. Mass directed Plaintiff to work certain days, "to which she responded by stating she would work the schedule agreed upon during her initial hire." *Id.* Upon receipt of that communication, Plaintiff alleges Mr. Mass "walked by her office and stopped in front of her office door and glared at her angrily and intensely," which he did "several times with the same angry intimidating stare and a scowl on his face." *Id.* Plaintiff represents that Mr. Mass "continued to micromanage [her] work scheduled on numerous incidents," and exhibited aggressive behavior towards Plaintiff when she reported the conduct to Mr. Mass's direct supervisor. *Id.* ¶ bb.

Other allegations against Mr. Mass in the Complaint include: improper and inappropriate comments, including use of a racial slur by Mr. Mass that Plaintiff overheard (*id.* ¶ 7p); reports by other employees that Mr. Mass exhibited "vulgar, intimidating, and threatening tone he takes with them" (*id.* ¶ 7t); modifications of another employee's work schedule "to make it disruptive for the

employee, withholding a raise in salary or promotions" (*id.*); rude behavior towards Plaintiff (*id.* ¶ 7u); noncompliance with a misconduct investigation amongst separate employees (*id.* ¶¶ 7x-7z); and punishing employees without any investigations into the allegations made (*id.* ¶¶ 7x; 7cc).

In Fall of 2022, Plaintiff asserts that Mr. Ragusa made a "flippant," comment while passing her in the hallway, that he "heard [Plaintiff] live[d] close by some people in here." Dkt. No. 45-1 ¶ 7aa. Plaintiff states she "was scared" by the comment and "believes Mr. Ragusa and Mr. Mass knows she made a safety complaint against them." *Id.* When she reported this comment and her beliefs to Mr. Bunda, he "did not state who he reached out to, but said if anything else happens that [she] should reach out to him." *Id.* Plaintiff purportedly "started taking a different route to her house in the afternoons out of fear that she was being followed" after the encounter. *Id.*

On January 24, 2023, Plaintiff alleges she "sent an email to her direct manager Mr. Bunda stating that she refuses to participate in the blatant abuse of power by Mr. Mass and Monique Edwards," a project manager, where they "punish[] employees without an investigation into the allegations made. *Id.* ¶¶ cc. Plaintiff asserts that her email "was in direct response to a grievance sent to her attention" from a separate employee, which "included Mr. Mass and Ms. Edwards, after placing unnecessary scrutiny on the employee, which included forms of micromanaging, intimidation tactics, and withholding work and information the employee need[ed] to complete work with." *Id.* Plaintiff asserts that following the email to Mr. Bunda, Mr. Mass "started excluding [P]laintiff from business calls at first" by "moving the call times without sending [P]laintiff notice of the new changes." *Id.* According to Plaintiff, "Mr. Mass did this to make it seem as though [she] [did] not have proper time management, and this is why [P]laintiff continually miss[ed] the calls." *Id.*

From February 18, 2023 to April 18, 2023, the parties do not dispute that Plaintiff "was

approved for leave" under the Family Medical Leave Act ("FMLA").  Dkt. No. 45-1 ¶ 44.

Plaintiff asserts that "[i]n or about March 2023," she participated "in a monthly call with the region that was sent to her by a third party while she was on FMLA [leave]."  Dkt. No. 45-1 ¶ 7ff.  She purportedly contacted Mr. Mass prior to the call to obtain the meeting information, but Mr. Mass "refused in another attempt to exclude her from a very important monthly meeting."  *Id.*  After eventually obtaining the meeting information from another individual and calling into the meeting, Mr. Mass's senior manager allegedly asked her questions and then proceeded to interrupt during Plaintiff's responses, without allowing her to complete her statement.  *Id.*  That individual further made disparaging comments about Plaintiff during the call, including that she "like[s] to talk too much."  *Id.*  Defendants deny Plaintiff's allegations.  Dkt. No. 45-1 ¶ 7ee.

On March 20, 2023, Plaintiff "returned to the Alstom JFK office earlier than the April 8, 2023 date without restrictions."  Dkt. No. 45-1 ¶ 7dd.  Plaintiff alleges that on her return, Mr. Mass informed Plaintiff that he "preferred [Plaintiff's] replacement while [she] was out on medical [leave], and wanted to ensure [Plaintiff] knew this."  *Id.* ¶ 7ee.  Plaintiff continues that she "was made aware that upon her termination that the same person came back to work on the site under a request of Mr. Mass."  *Id.*  Defendants dispute the occurrence of this allegation.  Dkt. No. 49 ¶ 7ee.

In April of 2023, Plaintiff "started her monthly reconciling of [the JFK site's] monthly required drug and alcohol accounts."  Dkt. No. 45-1 ¶ 7gg.  The Complaint asserts that "the JFK site neglected to send any employees for the month of March while [Plaintiff] was out on approved FMLA [leave]."  *Id.*  Plaintiff purportedly emailed a handful of individuals, including Mr. Bunda, Mr. Mass, and Mr. Mass's supervisor, concerning the failure to conduct the March drug and alcohol testing.  *Id.*  Shortly after that email, Mr. Mass allegedly "barged into [P]laintiff's office

slamming the office door into the wall behind it, while [P]laintiff was in the middle of a meeting with an employee via phone call and said, 'What the hell is going on here.'" *Id.* Mr. Mass allegedly then spoke to Plaintiff in an intimidating manner in asking her how the omission of random testing could be remedied. *Id.*

After the encounter with Mr. Mass, Plaintiff asserts that on April 12, 2023, she "had a call with Mr. Bunda, who wanted to discuss the conversation she had with Mr. Mass and the missed Drug and Alcohol randoms for March." *Id.* Mr. Bunda blamed Plaintiff for the oversight, to which she responded the testing should have been performed by the replacement human resources employee in her absence. *Id.* Mr. Bunda then suggested that Plaintiff "apologize to Mr. Mass for missing March [random drug and alcohol testing] and email him about what she will do going forward so this does not happen again." *Id.* Defendants dispute Plaintiff's claims and assert that the random testing was her responsibility. Dkt. No. 49 ¶ 7gg. Further, Defendants assert that random testing was also not performed for the January of 2023, in addition to the missed test in March. *Id.*

On April 3, 2023, Plaintiff was in her office "at approximately 7:15 a.m." with an IT technician, who was assisting her with a technological issue with her work computer. Dkt. No. 45-1 ¶ 7hh. Mr. Mass allegedly "walked into the doorway" of Plaintiff's office and asked the IT technician "why [he was] here so early" in "a slanderous undertone." *Id.* Mr. Mass continued to loudly inquire into the technician's presence in Plaintiff's office, which included rude and demeaning remarks directed towards the technician. *Id.* Plaintiff claims that Mr. Mass's inquisition "was due to [his] perceived idea that there is a relationship other than a business one" between Plaintiff and the technician, and that the technician was "working on her computer early in the morning [] due to a sexual relationship." *Id.*

b.    **Defendants' Assertions**[6]

Defendants' version of events distinctly contrasts with Plaintiff's.  Defendants contend that

throughout her employment, Plaintiff "had numerous performance issues related to her job at

Alstom."  Dkt. No. 43-2 ¶¶ 12-14.  Amongst these concerns included that Plaintiff did not

adequately allocate her time to the Newark location, that she was untimely, unresponsive, and

inaccurate with emails and reports, that the door to her office was often closed and that she was

otherwise unavailable to staff, and that she was absent from the sites and unreliable.  *Id.* ¶¶ 12-14.

Plaintiff additionally was "unable to maintain strong relationships with the Union."  *Id.* ¶ 18.

Specifically, the secretary treasurer of the Union "often complained to Plaintiff directly that she

failed to provide necessary documentation relative to Union employees and that Plaintiff needed

to improve her communication with the Union."  *Id.*

Defendants also state that Plaintiff made only "one set of complaints" while she was

employed at Alstom, contrary to her articulation of the events.  *Id.* ¶ 20.  That set of complaints

consisted of her email to Mr. Bunda that she was concerned for her safety at the JFK site after

receiving two emails.  *Id.* ¶ 21.  Defendants contend that the emails "did not contain any threatening

language to Plaintiff's person or property," but rather "constituted nothing more than routine

discussions related to Alstom's business transactions."  *Id.* ¶¶ 25-26.  As the investigation into that

complaint was ongoing, Plaintiff again emailed Mr. Bunda and advised him that Mr. Mass had

made "an under the breath comment that alerted [Plaintiff] to [Mr. Mass's] knowledge of the

personal safety concerns [she] raised."  *Id.* ¶ 30.  Defendants contend that they were unable to

substantiate any of Plaintiff's claims upon further investigation into the complaints.  *Id.* ¶¶ 31-33.

---

[6]  Unless otherwise noted, Plaintiff disputes Defendant's statement of facts, alleging that many of them rely
on "unsworn out of court statement[s]" that are "rank hearsay and cannot be considered in this summary
judgment motion."  *See, e.g.*, Dkt. No. 45-1 ¶¶ 12-19.

Defendants explain that the importance of random drug testing was repeatedly and expressly iterated to Plaintiff. *Id.* ¶¶ 37-39. Defendants claim that a discussion between Plaintiff and Mr. Mass's supervisor occurred on December 15, 2022, where Plaintiff was advised that the JFK and Newark sites "were not meeting the random drug and alcohol testing goals and that multiple tests were occurring in one month resulting in improper bunching." *Id.* ¶ 42. On January 17, 2023, another email was sent to Plaintiff concerning missed drug testing for the Month of January 2023. *Id.* ¶ 43.

After Plaintiff returned from approved leave, Plaintiff communicated with Mr. Bunda concerning the random testing that was to occur for March of 2023. *Id.* ¶ 48. Defendants assert that the testing had not been performed, and that the failure was Plaintiff's responsibility. *Id.* ¶¶ 46, 49. Defendants further contend that they were "unable to reconcile Plaintiff's provided data against the data she was recently distributing" regarding the testing. *Id.* ¶ 50.

On April 12, 2023, Plaintiff messaged Mr. Bunda and requested for "a day off on April 14, [2023] so that she can travel to Canada." *Id.* ¶ 51; Dkt. No. 45-1 ¶ 51. Defendants contend that Mr. Bunda "advised Plaintiff that she could not take time off on April 14, 2023," while Plaintiff asserts she was advised by Mr. Bunda that "he would prefer she take a different date." Dkt. No. 43-2 ¶ 52; Dkt. No. 45-1 ¶ 52. Plaintiff travelled to Canada from April 12 to April 14, 2025. *Id.* ¶¶ 53-54. Defendants allege that Plaintiff did not work while on her trip, and Plaintiff concedes that she "does not recall what she worked on" during that time period. Dkt. No. 43-2 ¶ 53-57; Dkt. No. 45-1 ¶¶ 53-57.

### iii. Plaintiff's Termination

On April 25, 2023, Plaintiff's employment with Alstom was terminated by Mr. Bunda. Dkt. No. 45-1 ¶ 58. Defendants assert that Mr. Bunda "made the decision to terminate Plaintiff's

employment" (Dkt. No. 43-2 ¶ 60), while Plaintiff claims "the decision was made by Mr. Mass and effected by [Mr. Bunda]." Dkt. No. 45-1 ¶ 60.

Plaintiff claims that her termination was due to "retaliation for not supporting management in the firing of their staff of color" and because "she requested a vacation day and it was denied." Dkt. No. 45-1 ¶ 59. Defendants claim, however, that the "ultimate reason" was due to her decision "to take unapproved time off," although they also cite to "other factors" including Plaintiff's "lack of communication and availability, issues with the Union, and failure to adequately perform monthly random drug testing." Dkt. No. 43-2 ¶ 59.

On April 26, 2023, Plaintiff filed a "Charge for Discrimination" application to the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 61. In filing her EEOC charge, Plaintiff failed to check the box stating that she had a disability. *Id.* ¶ 62.

### B.    Procedural History

On December 21, 2023, Plaintiff filed the instant Complaint. *See generally* Dkt. No. 1. Plaintiff brings claims against Defendants for: discrimination under five authorities, including Title VII, 42 U.S.C. § 1985, and the Rehabilitation Act, the NYSHRL, and the NYCHRL; retaliation under Title VII, the NYSHRL, and the NYCHRL; hostile work environment under Title VII; and various common law torts, consisting of prima facie tort, defamation, libel *per se*, intentional infliction of emotional distress, and "disparate treatment based on gender and disability or perceived disability."[7] *Id.* ¶¶ 139-226. The Complaint seeks damages for "loss of wages and

---

[7] The Complaint contains frequently inaccurate numbered paragraphs. *See* Dkt. No. 1 ¶¶ 139-226 (merging separate causes of action under distinct authorities into a single articulation of allegations); *id.* at ¶¶ 139-155 (skipping from her third cause of action to her fifth cause of action, omitting a fourth cause of action); *id.* ¶¶ 182-190 (including a ninth cause of action as well as a separate "nineth" cause of action). For ease of reference, the Court will thus refer to Plaintiff's claims by their names and authorities rather than their numbering.

benefits, compensatory damages and punitive damages in an amount to be determined at trial, plus costs, disbursements attorney's fees, and other equitable and/or declaratory relief and seeks declaratory relief and or an injunction against future unlawful conduct." *Id.* at 34-35.[8]

The case was initially assigned to the Honorable Hector Gonzalez, United States District Judge, and the undersigned.  Text Order dated Dec. 28, 2023.

On December 28, 2023, Judge Gonzalez ordered Plaintiff, who was represented by counsel, to file a letter describing her efforts to serve the Complaint and summons on each Defendant.  Text Order dated Dec. 28, 2023.  On January 12, 2024, after Plaintiff failed to file the requested letter by the deadline set by the Court, Judge Gonzalez again ordered Plaintiff to file the letter by January 16, 2024.  Text Order dated Jan. 12, 2024.

On January 16, 2024, Plaintiff filed the letter describing her efforts to serve Defendants. Dkt. No. 6.  Judge Gonzalez, upon review of Plaintiff's letter, determined that "Defendants have not yet been served," and ordered Plaintiff to file another letter by February 12, 2024 that described her service efforts on Defendants.  Text Order dated Jan. 16, 2024.

On February 13, 2024, after Plaintiff again failed to file the Court-ordered letter, Judge Gonzalez directed Plaintiff's counsel to show cause as to why sanctions should not be issued for noncompliance with multiple orders from the Court.  Text Order dated Feb. 13, 2024.  That same day, Plaintiff filed waivers of service returned executed on behalf of Defendants.  Dkt. Nos. 7-12. Plaintiff's counsel also filed a letter explaining her noncompliance with Judge Gonzalez's previous orders, and Judge Gonzalez declined to issue sanctions.  Dkt. No. 13; Text Order dated Feb. 14, 2024.

On March 12, 2024, the parties consented to Magistrate Judge jurisdiction before the

---

[8]  Page citations are to the ECF-stamped page numbers unless otherwise noted.

12

undersigned.  Dkt. Nos. 17-18.

On May 22, 2024, the parties appeared before the Court for an initial conference.  Minute Entry dated May 22, 2024.  The Court set a discovery schedule and a deadline of December 6, 2024 to take the first step in dispositive motion practice.  *Id.*  After extension requests, the date to take the first step in dispositive motion practice was extended to April 15, 2025.  Text Order dated Feb. 27, 2025.

On April 15, 2025, over two weeks after the close of all discovery and the date for the parties to take the first step in dispositive motion practice, Plaintiff filed "a vague letter alerting the Court to a deposition dispute concerning a deposition held nearly two months ago."  Dkt. No. 40; Text Order dated Apr. 15, 2025.  That same day, pursuant to the Court's scheduling order, Defendants filed their pre-motion conference letter for their anticipated motion for summary judgment.  Dkt. No. 41.  The Court ordered Plaintiff to respond to the letter by April 21, 2025.  Text Order dated Apr. 15, 2025.

Plaintiff failed to file the letter by the Court's deadline.  Text Order dated Apr. 22, 2025.  The Court *sua sponte* extended Plaintiff's response to April 22, 2025.  *Id.*  Plaintiff filed her response to Defendants' pre-motion conference letter on April 22, 2025. Dkt. No. 42.  The Court waived the requirement for a pre-motion conference and instead set a briefing schedule for Defendants' motion for summary judgment.  Text Order dated Apr. 22, 2025.

### C.    Defendants' Motion

On May 20, 2025, Defendants filed their motion for summary judgment.  *See* Dkt. No. 43. Defendants contend that summary judgment is warranted in their favor on all of Plaintiff's claims because her Title VII claims are time barred and she cannot establish liability for any of her claims. Dkt. No. 43-1 at 10-32.  Defendants request that all claims be dismissed with prejudice.  *Id.* at 32.

On June 23, 2025, after the Court granted Plaintiff's request for an extension to file her response brief, Plaintiff filed her opposition to Defendants' motion. Dkt. No. 45. Plaintiff argues that summary judgment should be denied because Defendants' motion rests on hearsay that "cannot be considered by the Court in this motion for summary judgment." *Id.* at 5. Plaintiff's response further disputes Defendants' motion Title VII discrimination, retaliation, and hostile work environment claims. *Id.* at 6-8. Plaintiff additionally submitted a Rule 56.1 counter statement of fact, which responded to each of Defendants' contentions in their Rule 56.1 statement. *See generally* Dkt. No. 45-1. Defendants filed their own Rule 56.1 response to Plaintiff's counter-statement of facts on July 11, 2025. *See generally* Dkt. No. 49.

## II.   <u>Legal Standard</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "There is 'no genuine dispute as to any material fact' where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material)." *Lange v. Dep't of Educ. of City of New York*, No. 17-CV-3443, 2018 WL 4636986, at *2 (S.D.N.Y. Sept. 26, 2018) (Sullivan, J.) (first quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); and then citing *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)).  The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a fact is genuinely disputed, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996); *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (explaining that a court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but merely to "determine whether there *are* issues of fact to be tried." (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984))).

Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007).  "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact.

A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor.  *Zenith Radio Corp.*, 475 U.S. at 587; *see Anderson*, 477 U.S. at 251.  "In other words, '[t]he litigant opposing summary judgment . . . may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial.'" *Jimenez v. City of New York*, No. 21-CV-6133 (RPK) (JRC), 2024 WL 198319, at *4 (E.D.N.Y. Jan. 18, 2024) (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d. Cir. 1980)).

"Summary judgment is appropriate even in discrimination cases," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003), but "additional considerations" need to be considered. *Desir v. City of New York*, 453 F. App'x 30, 33 (2d Cir. 2011). "A trial court must scrutinize the evidence presented for circumstantial proof which, if believed, would show discrimination." *Barberan v. Town of Eastchester*, No. 19-CV-10983 (VR), 2025 WL 962815, at *9 (S.D.N.Y. Mar. 31, 2025) (internal quotation omitted).

## III.   **Abandoned Claims**

As an initial matter, Defendants seek summary judgment in their favor on all of the claims alleged in the Complaint. *See generally* Dkt. No. 43-1. Plaintiff's response in opposition to Defendants' motion contains only counterarguments for her Title VII discrimination, retaliation, and hostile work environment claims against Alstom. Dkt. No. 45 at 2-8. The opposition otherwise entirely fails to address Defendants' motion as it concerns her remaining claims and Defendants in the Complaint, namely those claims brought under 42 U.S.C. § 1985, the Rehabilitation Act, the NYSHRL, the NYCHRL, and the tort claims for *prima facie* tort, defamation, libel *per se*, intentional infliction of emotional distress, and "disparate treatment based on gender and disability or perceived disability" against Defendants Ragusa, Bunda, "Unknown," Sands, and Mass. *See generally* Dkt. No. 45; *see* Dkt. No. 1 ¶¶ 139-226.

Where "a counseled non-moving party submits 'a partial response arguing that summary judgment should be denied as to some claims while not mentioning others,' that response 'may be deemed an abandonment of the unmentioned claims.'" *Oji v. Collins*, No. 22-CV-276 (KAM) (CLP), 2025 WL 2624975, at *15 (E.D.N.Y. Sept. 11, 2025) (citing *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) and quoting *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014)); *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016)

("[g]enerally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others, and a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." (quotations omitted)). "Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended." *Magtoles v. United Staffing Registry, Inc.*, 665 F. Supp. 3d 326, 347 (E.D.N.Y. 2023) (quoting *Jackson*, 766 F.3d at 196); *Oji*, 2025 WL 2624975, at *15 (noting that the plaintiff did not "provide a fulsome opposition to Defendant's motion for summary judgment as to his retaliation and hostile work environment claims, thereby supporting an inference that 'abandonment [of his discrimination claims] was intended.'" (citing *Jackson*, 766 F.3d at 196)); *BWP Media USA Inc. v. Polyvore, Inc.*, No. 13-CV-7867 (RA), 2018 WL 11449489, at *1 (S.D.N.Y. Dec. 13, 2018) (deeming claims not addressed by the plaintiff's partial opposition to summary judgment as abandoned and dismissing them). Indeed, "preparation of a response to a motion for summary judgment is a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses," as "Rule 56 is known as a highly useful method of narrowing the issues for trial." *Jackson*, 766 F.3d at 196.

Nonetheless, "Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed." *Creaven v. Erickson*, No. 22-CV-874, 2023 WL 4247213, at *3 (2d Cir. June 29, 2023) (citing *Jackson*, 766 F.3d at 194). Instead, "[b]efore summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed,' and

'the court must determine whether the legal theory of the motion is sound.'" *Id.* (quoting *Jackson*, 766 F.3d at 194). In fulfilling this duty, the Court need not "write elaborate essays using talismanic phrases," but it must include some explanation for why a grant of summary judgment is warranted. *Gachette v. Metro N.-High Bridge*, 598 F. App'x 803, 805 (2d Cir. 2015) (quoting *Jackson*, 766 F.3d at 196-97).

Here, the Court finds that Plaintiff—who is and has been represented by counsel since the onset of the litigation—has abandoned her claims under 42 U.S.C. § 1985, the Rehabilitation Act, the NYSHRL, and the NYCHRL, as well the remaining common law claims. Plaintiff's eight-page[9] brief in opposition to Defendants' motion only contains counterarguments to Defendant's request for summary judgment on her discrimination, retaliation, and hostile work environment claims against Alstom. Dkt. No. 45 at 6-8. Plaintiff's scant briefing is even more confounding when considering that Plaintiff filed a Rule 56.1 counter statement of fact attempting to respond to every factual assertion by Defendants. *See* Dkt. No. 45-1.

The present circumstances warrant a finding that Plaintiff abandoned all claims except for her Title VII discrimination, retaliation, and hostile work environment claims, which are explicitly addressed in her briefing. *See, e.g.*, *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (affirming finding that the plaintiff abandoned certain claims where she submitted a Rule 56.1 counter-statement of facts and briefed argument on only one separate claim); *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143-44 (2d Cir. 2016) (affirming summary judgment for abandoned claims under similar circumstances); *Moran v. Tesei,* No. 3:19-CV-722 (VAB), 2023 WL 3570670, at *8-*9 (D. Conn. May 19, 2023) (finding the plaintiff's claims

---

[9] The first page of the eight-page brief is the cover page; arguments are made only in the remaining seven pages. *See* Dkt. No. 45.

abandoned against all but one defendant under similar circumstances), *appeal dismissed*, 2024 WL 1597624 (2d Cir. Apr. 12, 2024); *Oji*, 2025 WL 2624975, at *15 (dismissing abandoned claims under similar circumstances); *Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 919 (N.D. Cal. 2016) (same).   The Court therefore will evaluate only Plaintiff's Title VII discrimination, retaliation, and hostile work environment claims.

Furthermore, Plaintiff's opposition asserts her Title VII claims only against Alstom, and is otherwise silent as to applying the law to the individual Defendants, *i.e.* Mr. Ragusa, Mr. Bunda, "Unknown," Mr. Sands, and Mr. Mass.   *See generally* Dkt. No. 45.   Under the same standards articulated above, the Court thus deems her Title VII claims against the individual Defendants as abandoned.   And even if Plaintiff had not abandoned her Title VII claims against these Defendants, "[i]t is well-settled in the Second Circuit that 'individuals are not subject to liability under Title VII.'"   *Carmody v. Vill. of Rockville Ctr.*, 661 F. Supp. 2d 299, 326 (E.D.N.Y. 2009) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)) (internal quotations omitted); *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023) ("Individuals are not subject to liability under Title VII").   Thus, Defendants are entitled to summary judgment on Plaintiff's Title VII claims against Mr. Ragusa, Mr. Bunda, "Unknown," Mr. Sands, and Mr. Mass.

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's abandoned claims, consisting of her discrimination claims against all Defendants under 42 U.S.C. § 1985, the Rehabilitation Act, the NYSHRL, and the NYCHRL; her retaliation claims against all Defendants under the NYSHRL and the NYCHRL; and her common law tort claims for *prima facie* tort, defamation, libel *per se*, intentional infliction of emotional distress, and "disparate treatment based on gender and disability or perceived disability."

## IV.   <u>Evidence Relied Upon By The Parties</u>

Before turning to the merits of Defendants' motion on the Title VII claims against Alstom, the Court evaluates the evidence presented by Defendants in support of their motion in light of the parties' dispute regarding the admissibility of the submissions.

In support of their motion for summary judgment, Defendants attaches 20 exhibits, consisting of deposition testimony from Plaintiff and Mr. Bunda (Dkt. Nos. 43-5, 43-8), Plaintiff's performance review from 2022 to 2023 (Dkt. No. 43-7), emails and messages between Defendants and other Alstom employees, including Plaintiff (Dkt. Nos. 43-6, 43-9 to 43-15, 43-17 to 43-21, 43-24), Plaintiff's termination letter (Dkt. No. 43-16); and the affidavit of Kari Ashcroft, an assistant secretary of Alstom, along with a data log showing Plaintiff's login information and remote work activity from April 12 through April 19, 2023 (Dkt. No. 43-22).

Plaintiff contends that Defendants "have not provided facts in admissible format" to support their motion. Dkt. No. 45 at 2. Specifically, Plaintiff argues that emails and messages between Alstom employees and Plaintiff and the performance review "are inadmissible hearsay" that do not "fall within the hearsay exceptions." *Id.* Defendants respond that the exhibits do not constitute hearsay, but rather "are admissible as agency statements pursuant to Federal Rule of Evidence 801(d)(2)(D)." Dkt. No. 48 at 8.

"Statements, to be considered properly on a motion for summary judgment, must be admissible if testified to or otherwise introduced at trial." *Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 337 (S.D.N.Y. 2020) (citing Fed. R. Civ. P. 56). If statements are offered for their truth, then those statements must not be inadmissible hearsay. *Barkley v. Penn Yan Cent. Sch. Dist.*, 442 F. App'x 581, 585 (2d Cir. 2011) (citing Fed. R. Civ. P. 56(c)(4)). "[A]t summary judgment, the 'proponent of an out-of-court statement [offered for its truth] bears the burden of proving it fits into a hearsay exception.'" *See Little v. Cnty. of Nassau*, 708 F. Supp. 3d

20

252, 265 (E.D.N.Y. 2023) (quoting *Great Lakes Reinsurance (UK) SE v. Herzig*, No. 16-CV-9848 (PGG), 2023 WL 4266012, at *5 (S.D.N.Y. June 29, 2023)).

Federal Rule of Evidence 801(d)(2)(D) permits statements to be introduced "'by the party's agent or employee on a matter within the scope of that relationship and while it existed' are admissible as non-hearsay." *Weaver v. Bloomberg L.P.*, 717 F. Supp. 3d 372, 387 (S.D.N.Y. 2024) (quoting Fed. R. Evid. 801(d)(2)(D)). "As the Second Circuit has explained, a declarant 'need only be an advisor or other significant participant in the decision-making process that is the subject matter of the statement' for the statement 'to be deemed within the scope of his agency.'" *Id.* (quoting *United States v. Rioux*, 97 F.3d 648, 661 (2d Cir. 1996)); *Smith v. Pathmark Stores, Inc.*, 485 F. Supp. 2d 235, 238 (E.D.N.Y. 2007) ("As the Second Circuit has noted, the admission into evidence of such statements is not subject to many of 'the technical prerequisites of other evidentiary rules' and 'should be granted freely.'" (quoting *Pappas v. Middle Earth Condo. Assoc.*, 963 F.2d 534, 537 (2d Cir. 1992))). A party sets forth a sufficient foundation for introduction of vicarious admissions under Rule 801(d)(2)(D) when it establishes "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Leser v. U.S. Bank Nat. Ass'n*, No. 09-CV-2362 (KAM) (MDG), 2012 WL 6738402, at *4 (E.D.N.Y. Dec. 29, 2012) (citing *Pappas*, 963 F.2d at 537); *Smith*, 485 F. Supp. 2d at 238 (same).

Here, Defendants' exhibits are party admissions and thus admissible nonhearsay under Rule 801(d)(2)(D). First, the emails are between individuals, including Plaintiff, with email addresses using the "@alstomgroup.com" domain name. *See generally* Dkt. Nos. 43-6; 43-9 to 43-15, 43-17 to 43-20, 43-24. The emails are dated during Plaintiff's employment period and often include signatures of the employee's position titles. *Id.* Finally, the matters discussed within the

21

emails pertain to the scope of their employment relationships with Alstom, as they involve discussion of their duties as supervisors and Plaintiff's responsibilities as an employee in the human resources department. *Id.*

Similarly, the performance review by Mr. Bunda (Dkt. No. 43-7) also falls within Rule 801(d)(2)(D). The report, which Defendants contend was made by Mr. Bunda in his role at Alstom during Plaintiff's employment, is demarcated with Alstom watermarks and evaluates Plaintiff's performance in her role at the company. Dkt. No. 43-7. The report thus clearly relates to not only Plaintiff's and Mr. Bunda's employment capacities but also goes to the substance of their capacities of Alstom's employees, *i.e.* whether Plaintiff was meeting expectations during her employment, the determination of which fell within Mr. Bunda's duties as her supervisor. *See, e.g.*, *Pilgrim v. McGraw-Hill Cos.*, 599 F. Supp. 2d 462, 476-77 (S.D.N.Y. 2009) (admitting statements by supervisor under Rule 801(d)(2)(D) in Title VII case because the statements pertained related "to a matter within the scope of his agency *i.e.*, his ability to hire someone for the company").

At bottom, the emails and performance evaluation undoubtedly fall within the scope of each declarant's agency relationship to Alstom. *Leser*, 2012 WL 6738402, at *5 (noting that "[c]ourts must look to the substance of the relationship" when evaluating admissibility of nonhearsay under Rule 801(d)(2)); *Schaghticoke Tribal Nation v. Kempthorne*, 587 F. Supp. 2d 389, 398 (D. Conn. 2008) (admitting emails under Rule 801(d)(2)(D)), *aff'd*, 587 F.3d 132 (2d Cir. 2009); *McDonald's Corp. v. Vanderbilt Atl. Holdings LLC*, No. 19-CV-6471 (DLI) (ST), 2025 WL 1826346, at *3 (E.D.N.Y. July 1, 2025) (same); *AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 17-CV-598 (BKS) (CFH), 2022 WL 4225170, at *5 (N.D.N.Y. Sept. 13, 2022) (noting admissibility of similar emails).

Accordingly, the emails and performance evaluation contained in the exhibits attached to Defendants' motion are admissible statements and will be considered in evaluating whether summary judgment is warranted.[10]

## V.    Title VII Statute of Limitations

### A.    Discrimination and Retaliation Claims

"Title VII requires individuals aggrieved by acts of discrimination in states like New York that have state or local employment discrimination enforcement mechanisms to file a charge with the [EEOC] within 300 days 'after the alleged unlawful employment practice occurred.'" *Rowe v. New York State Dep't of Tax'n & Fin.*, 786 F. App'x 302, 304 (2d Cir. 2019) (quoting 42 U.S.C. § 2000e5(e)(1)). "For plaintiffs alleging unlawful discrimination or retaliation, discrete actions such as 'termination, failure to promote, denial of transfer, or refusal to hire are easy to identify' and are 'not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002)). "Claims falling outside this statute of limitations are time-barred unless they are subject to waiver, estoppel, or equitable tolling, or fall within the continuing violation exception to the 300-day rule." *Rivas v. New York State Lottery*, 745 F. App'x 192, 193 (2d Cir. 2018) (first citing *Zipes v. Trans World Airline., Inc.*, 455 U.S.

---

[10] The Court notes that Plaintiff, in response to Defendants' motion, submits a self-serving affidavit, which largely tracks the allegations in the Complaint and includes references to her deposition, which she failed to attach as an exhibit to her opposition. Dkt. No. 45-2. "Self-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment." *Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.*, 400 F. Supp. 3d 7, 15 (S.D.N.Y. 2019). Additionally, Plaintiff includes untitled exhibits that contain randomly assorted emails, scans of what seem to be her self-made notes, and litigation documents pertaining to an unrelated lawsuit against Alstom without any context. *See generally* Dkt. Nos. 45-3 to 45-9. Moreover, Plaintiff's submissions are sparse, or are otherwise entirely devoid, of references or citations to evidentiary support for her statements in her affidavit and Rule 56.1 statement.

385, 393 (1982); and then citing *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)).

Here, it is undisputed that Plaintiff filed her EEOC charge on April 23, 2023. *See* Dkt. No. 45-1 ¶ 61; Dkt. No. 43-23 (containing copy of EEOC charge). Three hundred days prior to April 23, 2023 is June 27, 2022. Thus, claims resting on any alleged acts of discrimination by Defendants against Plaintiff occurring before June 27, 2023 are time-barred under Title VII's statute of limitations. *See Rowe*, 786 F. App'x at 304; *see also Callender v. New York State Dep't of Motor Vehicles*, No. 23-CV-9314 (KPF), 2025 WL 1785839, at *9 (S.D.N.Y. June 27, 2025) ("[T]o the extent the underlying conduct related to Plaintiff's transfer requests occurred 300 days prior to Plaintiff's EEOC charge, such claims would be time-barred."); *Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 581-82 (S.D.N.Y. 2017) (applying 300-day rule under Title VII's statute of limitations unless "the period has been equitably tolled or extended"); *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 576 (E.D.N.Y. 2011) ("Courts strictly adhere to the 300-day filing period" (citing *Morgan*, 536 U.S. at 114)).

The claims at issue are not subject to waiver or estoppel, as Defendants invoked a statute of limitations defense in both their answer (Dkt. No. 23 at 25) and in their motion for summary judgment (Dkt. No. 43-1 at 14-15). Nor are they subject to equitable tolling. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017)

"The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Id.* (citing *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011)). "[T]o secure equitable tolling, it is not enough for a party to show that he e*xperienced* extraordinary circumstances. He must further demonstrate that

those circumstances caused him to miss the original filing deadline." *Watson*, 865 F.3d at 132 (citations omitted); *see also Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("[T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect.").

Nothing before the undersigned supports a finding that Plaintiff's claims might be tolled. The parties do not dispute that Plaintiff filed her EEOC charge on April 23, 2023. Dkt. No. 45-1 ¶ 61. Indeed, Plaintiff did not even brief the timeliness of any of her claims in the opposition to Defendants' motion, let alone assert that she experienced any difficulty in filing the administrative complaint. *See generally* Dkt. No. 45. The facts, therefore, establish that equitable tolling is not warranted. *See Watson*, 865 F.3d at 132 (explaining that equitable tolling did not apply where the plaintiff mounted a "vigorous case" in the court at issue despite also being in immigration detention and fighting to prevent his deportation); *Callender*, 2025 WL 1785839, at *9 ("The mere fact that [the plaintiff] then sought to challenge this decision through an arbitration proceeding is not sufficient to toll the limitations period."); *Cherry v. City of New York*, 381 F. App'x 57, 58-59 (2d Cir. 2010) (finding claim untimely even though plaintiff had submitted complaints through the state agency's grievance procedures and through his union).

Nor can the continuing violations doctrine save Plaintiff's untimely allegations. "Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 155-56 (2d Cir. 2012); *see also Rowe*, 786 F. App'x at 304 (articulating same standard); *Banks*, 81 F.4th at 259 (same). "Such an exception effectively delays the statute of limitations

period for Title VII claims until the last act in furtherance of the discriminatory practice or policy occurs." *Allen v. New York State*, No. 2:24-CV-02800 (JS) (JMW), 2024 WL 4654220, at *2 (E.D.N.Y. Nov. 1, 2024).

"However, the continuing violations doctrine does not apply to discrete acts of discrimination, 'even if they are related to acts alleged in timely filed charges.'" *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247 (MKB), 2013 WL 1232355, at *5 (E.D.N.Y. Mar. 26, 2013) (quoting *Morgan*, 536 U.S. at 102. Absent compelling circumstances, "the courts of this Circuit have generally been loath to invoke the continuing violation doctrine[.]" *Percy*, 264 F. Supp. 3d at 582; *Cotz v. Matroeni*, 476 F. Supp. 2d 332, 356 (S.D.N.Y. 2007) ("Courts in the Second Circuit view continuing violation arguments with disfavor, and the doctrine's applicability outside of the Title VII or discrimination context is uncertain"); *Trinidad v. New York City Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) ("As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances" (internal quotations omitted)); *Cabrera v. New York City*, 436 F. Supp. 2d 635, 642 (S.D.N.Y. 2006) ("The Second Circuit has repeatedly ruled that multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." (citation omitted)).

These discrete acts can include "termination, disparate disciplining, and negative performance evaluations." *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 664 (E.D.N.Y. 2015). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Valtchev v. City of New York*, 400 F. App'x 586, 588-89 (2d Cir. 2010); *see also Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 205 (E.D.N.Y. 2014) ("Actions that are 'discrete' and 'easy to identify,' such as 'termination,

failure to promote, denial of transfer, or refusal to hire . . . constitute[ ] a separate actionable "unlawful employment practice,"' and cannot form the basis of a continuous and ongoing discriminatory practice that entitles a plaintiff to the continuing violation exception." (quoting *Morgan*, 536 U.S. at 114)).

Similar to equitable tolling, Plaintiff also fails to present a factual dispute as to whether any of her allegations fall within the continuing violation doctrine warranting its application. Apart from failing to argue that she falls within the doctrine, the facts, even when construed in the light most favorable to Plaintiff, do not lend support that the conduct she experienced was made pursuant to any discriminatory policies. Rather, they reveal a series of discrete actions by Defendants, including three occasions involving inappropriate sexual comments and conduct (*see, e.g.*, Dkt. No. 45-1 ¶¶ 7a-7h, 7hh); use of a racial slur by Mr. Mass to describe Plaintiff, which she overheard through the wall of her office (*id.* ¶ 7p); hostile or intimidating behavior from Mr. Mass and his supervisor (*see, e.g.*, *id.* ¶¶ 7k-7n, 7x, 7cc-7ff); failures to wear masks (*see, e.g.*, *id.* ¶¶ 7q); a statement that Defendant Ragusa "heard [she] lived close by some people here" (*id.* ¶ 7aa); and modifications of her work schedule by Mr. Mass (*see, e.g.*, *id.* ¶ 7o). Such actions constitute those occurring in a "particular moment in time," which are insufficient to invoke the doctrine. *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 445 (S.D.N.Y. 2023); *Anderson v. N.Y.C. Dep't of Fin.*, No. 19-CV-7971 (RA), 2020 WL 1922624, at *4 (S.D.N.Y. Apr. 21, 2020) (holding no continuing violation in allegations of failure to promote, failure to compensate for overtime, repeated transfers, and receipt of negative comments); *Malarkey v. Texaco, Inc.*, 559 F. Supp. 117, 121 (S.D.N.Y. 1982) ("Completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature." (emphasis omitted)).

Accordingly, Plaintiff's allegations predating June 27, 2022 are time-barred under Title VII's status of limitations for evaluating her discrimination and retaliation claims and thus will not be considered.

**B.    Hostile Work Environment Claims**

A hostile work environment claim under Title VII is governed by the same 300-day time limitation requirement as those for discrimination and retaliation. *Banks*, 81 F.4th at 259. However, "[c]laims alleging a hostile work environment require a different analysis than discrimination or retaliation claims because 'their very nature involves repeated conduct.'" *Id.* at 259-60 (quoting *Morgan*, 536 U.S. at 115). Hostile work environment claims are frequently subject to the continuing violations doctrine because they do not "occur on any one day," but rather "emerge[] 'over a series of days or perhaps years.'" *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 88 (2d Cir. 2024) (quoting *Morgan*, 536 U.S. at 115).

"Because a constellation of events over time can collectively give rise to a hostile environment claim, if 'an act contributing to the [hostile environment] occurs within the filing period,' the hostile work environment claim is timely, and a factfinder can hold a defendant liable for 'the entire time period of the hostile environment,' including the period falling outside of the limitations period." *King v. Aramark Servs. Inc.*, 96 F.4th 546, 560 (2d Cir. 2024) (quoting *Morgan*, 536 U.S. at 117). The continuing violation doctrine thus delays triggering of statute of limitations period for a hostile work environment claim "'until the last discriminatory act in furtherance of' the hostile work environment" occurs, i.e. when the claim accrues. *Olivieri*, 112 F.4th at 88 (quoting *Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022)).

Nonetheless, the "timely incident must be *sufficiently related* to the prior events so that they can be said to be part of the 'same' hostile work environment." *Fisher v. Valley Stream Cent.*

*High Sch. Dist.*, No. 2:23-CV-3449 (NJC) (AYS), 2025 WL 2467046, at *14 (E.D.N.Y. Aug. 27, 2025) (quoting *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. App'x 88, 91 (2d Cir. 2014)) (emphasis in original). "While the Second Circuit has not yet endorsed a specific test for determining whether alleged timely and untimely harassing acts are 'sufficiently related,' district courts have considered factors including '(1) whether the timely and untimely harassment is of a similar nature, (2) whether the same individuals perpetuated the harassment, (3) the frequency and temporal proximity of the acts, and (4) whether the employer took any intervening remedial action.'" *Id.* (quoting *Bonterre v. City of New York*, No. 18-CV-745 (ER), 2021 WL 4060358, at *3 (S.D.N.Y. Sept. 7, 2021)); *Annunziata v. Int'l Bhd. of Elec. Workers Loc. Union # 363*, No. 15-CV-03363 (NSR), 2018 WL 2416568, at *13 (S.D.N.Y. May 29, 2018) (collecting cases).

Here, Plaintiff's opposition states that she "has made the factual allegations" to sustain her claim for "hostile work place in her affidavit," but entirely fails to detail specific actions taken against her that warrant denial of summary judgment for Defendants. Dkt. No. 45 at 8. Nor does Plaintiff address Title VII's statute of limitations or whether the untimely allegations constitute a continuing violation. *See generally id.*

Nonetheless, viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the Court finds that some of Plaintiff's allegations are sufficiently related, thereby warranting consideration of those outside of the statute of limitations for hostile work environment claim. Plaintiff's claims predating June 27, 2022 in her affidavit include conduct she deemed threatening or meant to intimidate by Mr. Mass and Mr. Ragusa (Dkt. No. 45-2 at 4-9). These claims mirror those after June 27, 2022, which similarly recount allegations of an incident of intimidating comments by Mr. Ragusa (*id.* at 11) and threatening and intimidating behavior by Mr. Mass (*id.* at 10-14).

The timely and untimely hostile work environment allegations involve similar actors, similar forms of harassment, and occurred throughout Plaintiff's employment with Alstom. Those allegations concerning Mr. Mass's and Mr. Ragusa's threatening and intimidating behavior and comments are of the same nature as those postdating the statute of limitations bar and support Plaintiff's theory of discrimination based on her gender and her race. These acts will be considered in evaluating Plaintiff's hostile work environment claim. *See, e.g.*, *Garcia v. Westhampton Primary Care*, No. 2:23-CV-4319 (NJC) (ST), 2025 WL 2614945, at *14 (E.D.N.Y. Sept. 10, 2025) (applying continuing violations doctrine under similar circumstances); *Klymn v. Monroe Cnty. Sup. Ct.*, 641 F. Supp. 3d 6, 23-24 (W.D.N.Y. 2022) (same); *Cohen v. Suffolk Cnty.*, No. 17-CV-2527 (SIL), 2023 WL 2240439, at *7 (E.D.N.Y. Feb. 27, 2023) (denying reconsideration and affirming application of the doctrine on summary judgment).

The allegations against Mr. Santiago, the unnamed employee, and Mr. Mass's purported use of a racial slur, however, are not sufficiently related, as they are discrete occurrences. Plaintiff's affidavit alleges inappropriate sexual comments directed towards her by Mr. Santiago (Dkt. No. 45-2 at 3-4); inappropriate sexual conduct by an unnamed employee which she did not report (*id.* at 3); and Mr. Mass's use of a racial slur in describing Plaintiff, which Plaintiff overheard through her office walls (*id.* at 6). Plaintiff makes no other allegations of improper sexual actions against her or any other conduct by Mr. Santiago besides the errant comment. *See, e.g.*, *Maxton v. Underwriter Lab'ys, Inc.*, 4 F. Supp. 3d 534, 544 (E.D.N.Y. 2014) (finding untimely claims against one individual were not sufficiently related to the timely claims against other, separate individuals); *Bonterre*, 2021 WL 4060358, at *3 (rejecting application of doctrine to acts of two individuals who were uninvolved in the timely acts); *Ball v. Marriott Int'l, Inc.*, 627 F. Supp. 3d 296, 316 (S.D.N.Y. 2022) (rejecting application of doctrine where the untimely event

did not concern the perpetrators of the timely events).  Further, Plaintiff does not claim that Mr. Mass or other employees used racial slurs on other occasions, and the untimely incident where Plaintiff allegedly overheard Mr. Mass using a slur does not substantially relate to the other allegations which are otherwise facially neutral to her race.  *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70 (2d Cir. 2010) (finding no continuing violation where one untimely comment was not of the same nature as the alleged harassment that was timely); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012) ("As a general rule, to constitute a hostile work environment, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." (internal quotations omitted)), *aff'd*, 713 F.3d 163 (2d Cir. 2013).

Because the allegations do not fall within the pattern Plaintiff alleges in her other assertions, those events do not constitute a continuing violation and will not be considered.  *Munck v. Simons Found.*, No. 23-CV-9188 (LAP), 2024 WL 4307776, at *6 (S.D.N.Y. Sept. 26, 2024) (rejecting application of the doctrine of discrete acts that did not support her theory of discrimination); *Spencer v. NYC Dep't of Educ.*, No. 22-CV-10712 (JLR), 2024 WL 642943, at *5 (S.D.N.Y. Feb. 15, 2024) (explaining that untimely, discrete events that were dissimilar from other allegations could not be considered in the plaintiff's hostile work environment claim).  Accordingly, the continuing violation doctrine applies to untimely allegations concerning Mr. Mass's and Mr. Ragusa's intimidating conduct in evaluating her hostile work environment claim.

## VI.    Title VII Discrimination

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).  "A plaintiff asserting a Title

VII discrimination claim must allege facts showing that '(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision,' which can be shown 'by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" *Bledsoe v. Delta Air Lines, Inc.*, No. 23-CV-3146 (HG) (JAM), 2024 WL 1142321, at *2 (E.D.N.Y. Mar. 15, 2024) (quoting *Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015)). "At the summary judgment stage, Title VII discrimination claims are governed by the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)." *Philpott v. State Univ. of New York*, 805 F. App'x 32, 33 (2d Cir. 2020) (citing *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012)); *Franco v. City of New York*, No. 19-CV-5905 (AMD) (CLP), 2025 WL 964014, at *5 (E.D.N.Y. Mar. 31, 2025).

Under the *McDonnell Douglas* framework, the plaintiff must first "establish a *prima facie* case of discrimination." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). If an employee can make that showing, a presumption of discrimination arises and "the burden then shifts to the employer to 'articulate a legitimate, non-discriminatory reason' for the disparate treatment." *Vega*, 801 F.3d at 83 (quoting *McDonnell Douglas*, 411 U.S. at 802). "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext' for discrimination." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804); *see also Bidon v. Collins*, No. 22-CV-00590 (KAD), 2025 WL 934849, at *4 (D. Conn. Mar. 27, 2025) ("[T]he *McDonnell-Douglas* test proceeds as follows: (1) the plaintiff 'bears the minimal burden of setting out a prima facie discrimination case,' (2) if the plaintiff satisfies their burden, the plaintiff 'is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action,' and (3) if the

defendant proffers a legitimate, nondiscriminatory reason, 'the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination.'" (quoting *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006))).

When analyzing each element of the *McDonnell Douglas* burden-shifting framework, there "must be a determination of whether the proffered admissible evidence . . . would be sufficient to permit a rational finder of fact" to conclude that the element was satisfied. *LaFond v. Gen. Physic Servs. Corp.*, 50 F.3d 165, 173 (2d Cir. 1995) (internal quotation marks and citations omitted). "[I]t is not within the province of the trial court at the summary judgment stage to resolve ambiguities" and "decide what inferences should be drawn." *Id.* at 173-74 (internal quotation marks and citations omitted).

A.    The First Step of the *McDonnell Douglas* Test

At the first stage of the *McDonnell Douglas* burden shifting analysis, the plaintiff must show "(1) [she] belonged to a protected class; (2) [she] was qualified for the position [she] held; (3) she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Philpott*, 805 F. App'x at 34 (citing *Brown*, 673 F.3d at 150); *Banks*, 81 F.4th at 270. "The burden at this stage 'is not onerous.'" *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024) (quoting *Banks*, 81 F.4th at 270), *cert. denied*, 145 S. Ct. 173 (2024). "Once the plaintiff has established a *prima facie* case, the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its adverse action." *Id.* (quoting *Vega*, 801 F.3d at 83). "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext' for discrimination.'" *Vega*, 801 F.3d at 83 (quoting *McDonnell Douglas*, 411 U.S. at 802).

Concerning Plaintiff's *prima facie* discrimination claim against Alstom, the parties do not dispute that she belonged to a protected class, that she was qualified for her position, and that she suffered an adverse employment action. *See generally* Dkt. No. 43-1 (containing no dispute over the first three elements); Dkt. No. 43-5 at 13-24, 58, 67 (containing excerpts from Plaintiff's deposition explaining her education and employment background, that she is an African American woman, and that she was terminated on April 25, 2023); Dkt. No. 45-2 at 1 (explaining same in Plaintiff's affidavit). The parties do, however, dispute whether an inference of discrimination can be drawn from her termination. Dkt. No. 43-1 at 16-17; Dkt. No. 45 at 6-7.

"The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' *i.e.*, a discriminatory reason." *Senese v. Longwood Cent. Sch. Dist.*, 330 F. Supp. 3d 745, 766 (E.D.N.Y. 2018) (quoting *Stratton v. Dep't for the Aging*, 132 F.3d 869, 878 (2d Cir. 1997)). A plaintiff can meet the burden at the fourth prong "through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." *Vega*, 801 F.3d at 87 (internal citation omitted). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)); *see Banks*, 81 F.4th at 271 ("[A] plaintiff can satisfy the fourth part of the prima facie case in a variety of ways, such as by showing . . . biased comments by a decisionmaker." (citations omitted)).

34

"Because the district court is not to resolve issues of fact on a summary judgment motion, 'its determination of whether the circumstances give rise to an inference of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.'" *Abdelal v. Police Comm'r*, 857 F. App'x 30, 31 (2d Cir. 2021) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994)). Moreover, "it is not the role of federal courts to review the correctness of employment decisions or the processes by which those decision are made." *Sassaman v. Gamache*, 566 F.3d 307, 314 (2d Cir. 2009). Rather, "[t]he law requires courts to respect an employer's decision to hire or fire employees according to its own criteria, so long as they do not include unlawful discrimination." *Morales v. Bottling Grp., LLC*, 374 F. Supp. 3d 257, 269 (W.D.N.Y. 2019), *aff'd* 814 F. App'x 630 (2d Cir. 2020).

Here, even when viewed in the light most favorable to Plaintiff, nothing before the Court supports Plaintiff's allegations that her termination was motivated by discrimination. Plaintiff does not allege that any statements made by Mr. Bunda, who testified to making the decision to terminate Plaintiff's employment (Dkt. No. 43-8 at 17), exhibited any form of ethnically degrading criticism or invidious comments. Indeed, Plaintiff's affidavit, motion, and complaint do not allege that Mr. Bunda exhibited any inappropriate behavior towards her throughout her employment with Alstom. Plaintiff thus fails to create a triable issue of fact that her termination was motivated in any part by unlawful discrimination. Plaintiff contends that the decision to terminate her employment was "made by Mr. Mass and effected by" Mr. Bunda. Dkt. No. 45-1 ¶ 60. Plaintiff, however, provides no supporting evidence for her conclusory statement. Moreover, her assertion is directly at odds with Mr. Bunda's deposition testimony (Dkt. No. 43-8 at 17), the performance review created by Mr. Bunda (Dkt. No. 43-9), and Plaintiff's own assertion that Mr. Bunda was

"her direct Human Resources manager[.]"  Dkt. No. 45-1 ¶ 4.

To the extent that Plaintiff relies on her "sworn affidavit of the facts in this case," that document is almost entirely self-serving, containing few citations to corroborating evidence.  *See generally* Dkt. No. 45-2.  As noted *supra*, "[s]elf-serving, conclusory affidavits, standing alone" do not suffice to create a triable issue of fact, nor do they, on their own, defeat a motion for summary judgment.  *Mason.*, 400 F. Supp. 3d at 15; *Cestaro v. Prohaska*, 681 F. Supp. 3d 121, 125 (S.D.N.Y. 2023) ("A conclusory contradiction of undisputed evidence in a self-serving affidavit, unsupported by other evidence, is not by itself sufficient to create a genuine dispute of material fact.").  Moreover, the affidavit's statements that do cite to record evidence have no bearing on any inference of pretext.  *See* Dkt. No. 45-2 at 19 (asserting that Mr. Bunda "had no written complaints from anybody calling [her] and not getting through"); *id.* at 19-20 (asserting that Mr. Bunda stated in his deposition that Plaintiff was terminated for requesting "a vacation day and it was denied," which was the only reason underlying her termination).

And even when considering the conclusory statements contained in the affidavit and those purportedly supported by record evidence, those allegations concern individuals who were unrelated to the decision to terminate Plaintiff.  *See Sylla v. New York City Dep't of Educ.*, 664 F. Supp. 3d 311, 327 (E.D.N.Y. 2023) (finding statements made by those uninvolved in termination decision inapposite to the plaintiff's Title VII discrimination claim).  Although "[v]erbal comments may give rise to an inference of discriminatory motivation," such comments have little probative value on whether a decisionmaker was "motivated by the discriminatory sentiment expressed in the remark."  *Cherry v. New York City Hous. Auth.*, 564 F. Supp. 3d 140, 172 (E.D.N.Y. 2021). Moreover, stray remarks alone—even when made by a decisionmaker—are insufficient to satisfy Plaintiff's burden in showing a prima facie case.  *Id.* (citing *Fletcher v. ABM Building Value*, 775

F. App'x 8, 13 (2d Cir. 2019)).

"In determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark,' a court should consider the following factors: (1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decisionmaking process." *Posner v. Sprint/United Mgmt. Co.*, 478 F. Supp. 2d 550, 557 (S.D.N.Y. 2007); *cf. Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010) (articulating same standard in affirming the district court's orders to exclude evidence of stray remarks in discrimination claim).

Plaintiff has not established a triable issue of fact that the comments attributed to Defendants and other employees of Alstom were related to the adverse employment actions. Plaintiff's allegations consist of stray remarks that are untethered to Mr. Bunda's termination of Plaintiff's employment. Such remarks, without more, "cannot get a discrimination suit to a jury." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998); *see Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019) (recognizing same); *Taylor v. Dollar Tree Stores*, No. 18-CV-1306 (SJB), 2020 WL 2478663, at *11 (E.D.N.Y. May 13, 2020) (granting summary judgment for the defendant where "[t]he only evidence proffered for the alleged statement is [the plaintiff's] own deposition testimony," which "is insufficient to survive summary judgment."); *see Adam v. Glen Cove Sch.*, No. 06-CV-1200, 2008 WL 508689, at *8 (E.D.N.Y. Feb. 21, 2008) (Bianco, J.) ("In short, there is not a scintilla of evidence that the decisionmakers who were involved in the decision to terminate the plaintiff, much less the Board of Education which voted to terminate plaintiff, had any knowledge of these incidents or were motivated in any way by plaintiff's race. Under such

37

circumstances, the stray remarks by these non-decisionmakers are insufficient, without other evidence, to raise an inference of discrimination.").

Accordingly, Plaintiff fails to carry her burden in showing a *prima facie* discrimination claim based upon her termination with Alstom. Defendants' motion for summary judgment is therefore granted with respect to Plaintiff's claims for discrimination under Title VII against Alstom.

**B    The Second and Third Steps of the *McDonnell Douglas* Test**

Since Plaintiff's claims do not survive the first step of the *McDonnell Douglas* analysis, summary judgment is warranted. But even if Plaintiff had satisfied the first step of the *McDonnell Douglas* test, summary judgment in favor of Defendants on the discrimination claim is still warranted because Defendants have explained a legitimate nondiscriminatory reason for the adverse employment actions, and because Plaintiff has not shown that a factfinder could conclude those reasons were pretextual.

Defendants contend that Plaintiff's termination was based on her "decision to take unapproved time off," as well as "her lack of communication and availability, issues with the Union, and failure to adequately perform monthly drug testing." Dkt. No. 43-2 ¶ 59.

"Although at this step [the defendants] 'need not persuade the court that [it was] actually motivated by the proffered reasons,'" *Tieu v. New York City Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 323 (S.D.N.Y. 2024) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981)), Defendants offered substantial undisputed evidence to support their justification. *See, e.g.*, Dkt. Nos. 43-7 (containing feedback that employees felt "as if they are operating without [human resources] support" in performance review); Dkt. No. 43-8 (containing Mr. Bunda's testimony that employees provided feedback that Plaintiff was nonresponsive); Dkt. No. 43-6

(containing email outlining Plaintiff's deficient job performance); Dkt. No. 43-19 (noting that random testing was not conducted for March of 2023); Dkt. No. 43-20 (same); Dkt. No. 43-8 at 20-21 (containing Mr. Bunda's testimony that Plaintiff's request for leave in April of 2023 was not approved and that other employees could not contact her during her trip); Dkt. No. 43-5 at 215 (containing Plaintiff's testimony that she travelled to Canada in April of 2023 and worked remotely); Dkt. No. 43-21 (containing data from Defendant's IS&T Department that Plaintiff's computer was not logged into the system or transmit any emails or messages during her trip).

After Defendants offered these legitimate, nondiscriminatory reasons, "[t]he presumption of discrimination arising from the *prima facie* case [] 'drops out of the analysis.'" *Philpott*, 805 F. App'x at 34; *Lenzi*, 944 F.3d at 107-08 ("If the employer puts forth a legitimate, non-discriminatory justification, the presumption drops out of the analysis and the plaintiff must establish, by a preponderance of the evidence, that the employer's justification is a pretext for discrimination"). Resolving all ambiguities and drawing all inferences in her favor, Plaintiff's conclusory and unsupported submissions do not create a material dispute of fact whether Defendants' non-discriminatory reasons were "not the exclusive reason for the adverse employment action." *Bart*, 96 F.4th at 574; *Joseph v. Owens & Minor Distribution, Inc.*, 5 F. Supp. 3d 295, 313 (E.D.N.Y. 2014) ("At this stage of the burden-shifting analysis, '[c]onclusory and speculative allegations will not suffice to demonstrate discriminatory intent.'" (quoting *Henny v. New York State*, 842 F. Supp. 2d 530, 553 (S.D.N.Y. 2012))), *aff'd*, 594 F. App'x 29 (2d Cir. 2015). The uncontroverted evidence shows that Plaintiff's deficient performance in her duties and responsibilities had been raised with her and acknowledged by other employees on numerous occasions prior to her termination, consistent with the nondiscriminatory basis proffered by Defendants.

Plaintiff has therefore failed to show that her termination had any connection to her purported protected status. *See Kanhoye v. Altana Inc.*, 686 F. Supp. 2d 199, 213 (E.D.N.Y. 2009) (dismissing discrimination claims on summary judgment where the plaintiff failed to offer any rebuttal to the defendant's nondiscriminatory reason to show pretext). Plaintiff thus has not satisfied her burden under the third step in the *McDonnell Douglas* framework to defeat Defendants' motion even assuming she established a *prima facie* case of discrimination.

Accordingly, Defendants' motion for summary judgment is granted on Plaintiff's Title VII discrimination claim against Alstom.

## VII.   Title VII Retaliation

"At the summary judgment stage, claims of retaliation brought under Title VII are analyzed under the burden-shifting framework set by the Supreme Court in *McDonnell Douglas*." *McDonald v. Williams-Sonoma, Inc.*, No. 22-CV-4164 (HG), 2024 WL 4188980, at *5 (E.D.N.Y. Sept. 13, 2024) (citation omitted). "Under the three-step *McDonnell Douglas* framework, '[f]irst, the plaintiff must establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Id.* (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)); *see also Carr v. New York City Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023) (A plaintiff establishes a *prima facie* case of retaliation by showing "(1) [he] engaged in protected activity, (2) the defendant was aware of that activity, (3) [he] was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions.").

"A plaintiff's 'burden in this regard is *de minimis*.'" *McDonald*, 2024 WL 4188980, at *5

(citation omitted). "If [a] plaintiff meets this initial burden, 'a presumption of retaliation arises,' and the defendant must 'articulate a legitimate, non-retaliatory reason for the adverse employment action.'" *Id.* "If the defendant does so, then 'the burden shifts back to the plaintiff' who 'must show that the reason offered by the employer is merely pretext, and that the employer's desire to retaliate was [a] but-for cause of the challenged employment action.'" *Id.* (citing *Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 14 (2d Cir. Jan. 30, 2018); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, . . . requir[ing] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

## A.     The First Step of the *McDonnell Douglas* Test

With respect to the first element of Plaintiff's *prima facie* retaliation claim, the undisputed evidence shows that she engaged in protected activity to which Defendant was aware. Plaintiff asserts that the "protected activity" she engaged in included "the task assigned to her, one of an independent arbiter in employee complaints," which is "exactly what she was hired to do" along with "handl[ing] employee management disputes." Dkt. No. 45 at 7. Plaintiff similarly states that she "stood up for several employees who were being denied their rights," including to "management when they wanted to summarily fire" or "terminate" to unrelated individuals. *Id.* Plaintiff claims that when she "made recommendations" based on her investigations of other employee complaints, her supervisors "ignored her recommendations and did what they wanted." *Id.*

To support her position, Plaintiff offers an email dated January 23, 2023, where she conveys her concerns to Mr. Bunda that employees who had previously made complaints to management were treated unethically. Dkt. No. 45-5 at 1-5. Such communications constitute

protected activity, as an employee that "actively supports other employee in asserting their Title VII rights or personally complains or is critical about the discriminatory employment practices of her employer" fall within the ambits of the statute. *Littlejohn*, 795 F.3d 318 (citing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).[11]  Plaintiff further engaged in protected activity when she made a safety report against Mr. Mass and Mr. Ragusa in Fall of 2022, which Defendants do not dispute.  *See* Dkt. No. 45-1 ¶¶ 7aa-7bb; Dkt. No. 43 at 22-23.  All such communications were made to Mr. Bunda, creating no dispute of fact that Defendants were aware of Plaintiff's activity.  Dkt. No. 45-5 at 1-5; Dkt. No. 45-1 ¶¶ 7aa-7bb; Dkt. No. 43 at 22-23.

Plaintiff also experienced an adverse employment action when her role was terminated by Alstom on April 25, 2025.  *See* Dkt. No. 45-1 ¶ 58; *see also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014) ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."); *Collazo v. County of Suffolk*, 163 F. Supp. 3d 27, 52 (E.D.N.Y. 2016) ("Title VII's anti-retaliation provision is broader than its anti-discrimination provision and 'extends beyond workplace-related or employment-related retaliatory acts and harms'" (quoting *Hicks*, 593 F.3d at 165)).  Thus, Plaintiff engaged in protected activity within Title VII's statute of limitations, of which Defendants were aware, and experienced an adverse employment action—thereby satisfying the first three elements of her *prima facie* showing.

---

[11]  Plaintiff's other communications, which merely convey that some employees had made complaints that she investigated within the scope of her duties, are not protected activity.  "To the extent an employee is required as a part of her job duties to report or investigate other employees' complaints of discrimination, such reporting or investigation by itself is not a protected activity" under Title VII "because merely to convey others' complaints of discrimination is not to oppose practices made unlawful by Title VII." *Littlejohn*, 795 F.3d at 318.  Thus, mere communications by Plaintiff to supervisors of complaints lodged by other employees do not constitute protected activity within the ambit of Title VII.

With respect to the fourth element of her retaliation claim, Plaintiff meets her *de minimis* showing of causation through temporal proximity. Generally, "[p]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Fraser v. MTA Long Island Rail Rd.*, 307 F. Supp. 3d 105, 115 (E.D.N.Y. 2018) (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *Hicks*, 593 F.3d at 170.

Plaintiff has not proffered any direct evidence that the adverse employment actions taken against her were causally linked with his protected activities. Plaintiff has not shown that Mr. Bunda's decision to fire her was rooted in the safety report she made in Fall of 2022 or her email raising allegations that other complaining employees were mistreated in January of 2023. Indeed, no evidence submitted to the Court, through testimony or exhibits, suggests such a connection.

Notwithstanding the lack of direct evidence of causation, Plaintiff can still, at this stage, establish a *prima facie* retaliation claim indirectly through evidence of temporal proximity between the protected activities and adverse employment action. "The Supreme Court has noted that '[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Fraser*, 307 F. Supp. 3d at 115 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). "The Second Circuit 'has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.'" *Husser v. New York City Dep't of Educ.*, 137 F. Supp.

3d 253, 274 (E.D.N.Y. 2015) (quoting *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554-555 & n. 5 (2d Cir. 2001)).

Here, the undisputed facts exhibit a temporal proximity between the protected activities and subsequent adverse employment actions sufficient to satisfy Plaintiff's burden at the first step of the *McDonnell Douglas* test. Plaintiff made a safety report in Fall of 2022, and she conveyed her concerns of mistreatment in January of 2023. Dkt. No. 45-5 at 1-5; Dkt. No. 45-1 ¶¶ 7aa-7bb; Dkt. No. 43 at 22-23. Both actions were directed at Mr. Bunda, who fired Plaintiff on April 25, 2023. Dkt. No. 45-1 ¶ 58. Plaintiff has thus established, for purposes of her *prima facie* retaliation claim, temporal proximity between her protected activities and her termination showing causation to satisfy the "*de minimis*" burden under the first stage of the framework. *See, e.g.*, *Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230, 247 (N.D.N.Y. 2010) (finding six months between protected activity and termination sufficient for prima facie retaliation claim); *Vega*, 801 F.3d at 92 (finding three-month gap between EEOC complaint and alleged retaliatory act found to be sufficient); *Laudadio v. Johanns*, 677 F. Supp. 2d 590, 614 (E.D.N.Y. 2010) (collecting cases).

Accordingly, Plaintiff has established a *prima facie* retaliation claim under the first step of the *McDonnell Douglas* framework.

**B.    The Second and Third Steps of the *McDonnell Douglas* Test**

"Once the plaintiff has established a *prima facie* showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (citing *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011)). Consistent with the Court's findings in evaluating the Title VII discrimination claim, Defendants have carried their burden in this respect. As explained above, Defendants based Plaintiff's termination on her unauthorized travel, where she failed to

complete her work duties, as well as her deficient performance in her role throughout her employment, including her failures to conduct monthly drug testing and her difficulties in communicating with other employees. *See e.g.*, Dkt. Nos. 43-7 (containing feedback that employees felt "as if they are operating without [human resources] support)" in performance review); Dkt. No. 43-8 (containing Mr. Bunda's testimony that employees provided feedback that Plaintiff was nonresponsive); Dkt. No. 43-6 (containing email outlining Plaintiff's deficient job performance); Dkt. No. 43-19 (noting that random testing was not conducted for March of 2023); Dkt. No. 43-20 (same); Dkt. No. 43-8 at 20-21 (containing Mr. Bunda's testimony that Plaintiff's request for leave in April of 2023 was not approved and that other employees could not contact her during her trip); Dkt. No. 43-5 at 215 (containing Plaintiff's testimony that she travelled to Canada in April of 2023 and worked remotely); Dkt. No. 43-21 (containing data from Defendant's IS&T Department that Plaintiff's computer was not logged into the system or transmit any emails or messages during her trip).

Once the defendant articulates its non-retaliatory reason, the burden shift back to the plaintiff to show that that reason "is a mere pretext for retaliation." *Zann Kwan*, 737 F.3d at 845 (citing *Weinstock*, 224 F.3d at 42). "Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90. "The plaintiff may demonstrate that the defendant's retaliation was a 'but-for' cause of the adverse employment action by setting forth 'weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action' from which it could be concluded that the defendant's explanations were mere pretext." *Collazo*, 163 F. Supp. 3d at 53-54 (quoting *Zann Kwan*, 737 F.3d at 846). Critically, however, "[t]emporal

proximity alone is insufficient to defeat summary judgment at the pretext stage." *Montanez v. McDean LLC*, 770 F. App'x 592 (2d Cir. 2019) (quoting *Zann Kwan*, 737 F.3d at 847).

Here, Plaintiff's does not create any dispute regarding whether Defendants' explanations for her termination were based on anything but the nondiscriminatory reasons they provided. Plaintiff has presented no evidence that shows a weakness, implausibility, inconsistency, or contradiction in Alstom's nonretaliatory reasons. Reviewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the record is devoid of any evidence that might raise a triable issue of fact on whether Defendants' reasoning was pretextual apart from temporal proximity. Courts have repeatedly held, however, that reliance on temporal proximity alone is insufficient to satisfy a plaintiff's burden at the third stage of the *McDonnell Douglas* framework. *See, e.g.*, *Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 50 (2d Cir. 2025) ("To survive summary judgment at this stage, [a Title VII retaliation claimant] cannot rely solely on temporal proximity."); *Dixon v. Int'l Fed'n of Accts.*, 416 F. App'x 107, 110 (2d Cir. 2011) (explaining temporal proximity alone is insufficient to establish pretext); *Smith*, 440 F. Supp. 3d at 344 (same); *Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 284 n.30 (E.D.N.Y. 2013) (same); *Fraser*, 307 F. Supp. 3d at 116 (same); *Giscombe*, 39 F. Supp. 3d at 403 (same).

Because Plaintiff offers no other evidence of retaliatory intent apart from the timing between the events, she fails to show retaliation was the but-for cause for the adverse employment actions taken against her. *See Osekavage v. Sam's E., Inc.*, 619 F. Supp. 3d 379, 394 (S.D.N.Y. 2022) (stating that a plaintiff may rely on evidence comprising his *prima facie* case including temporal proximity to defeat summary judgment, but that "temporal proximity alone is insufficient to defeat summary judgment at the pretext stage"). There is thus no dispute of material fact that might lead a fact finder to conclude that Plaintiff has established a Title VII retaliation claim.

Accordingly, Defendants' motion for summary judgment on Plaintiff's retaliation claim is granted.

## VIII.   Title VII Hostile Work Environment

"To make out a hostile work environment claim under Title VII, a plaintiff must allege facts demonstrating [that] the treatment in question: '(1) is objectively severe or pervasive—that is . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected class].'" *Andrade v. Cultural Care, Inc.*, 706 F. Supp. 3d 348 (E.D.N.Y. 2023) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)), *appeal withdrawn*, 2024 WL 1651337 (2d Cir. Mar. 18, 2024); *Tassy*, 51 F.4th at 533 (same). Furthermore, the plaintiff must "show 'a specific basis for imputing the hostile work environment to the employer.'" *McNamara v. Cnty. of Saratoga*, 748 F. Supp. 3d 68, 89 (N.D.N.Y. 2024) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 357 (2d Cir. 2001)).

In evaluating whether the objective and subjective components of the cause of action reach the necessary threshold, "courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014). "To withstand summary judgment, [the plaintiff] must produce evidence that 'the workplace was the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult, that the terms and conditions of her employment were thereby altered.'" *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 446 (E.D.N.Y. 2013) (quoting *Mills v. S. Conn. State Univ.*, 519 F. App'x 73, 75 (2d Cir. 2013)). In other words, "[t]he incidents typically 'must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *McNamara*, 748 F. Supp. 3d at 89 (quoting *Agosto*

*v. New York City Dep't of Educ.*, 982 F.3d 86, 101 (2d Cir. 2020)).  "A single incident may qualify, but to do so it must be 'extraordinarily severe.'"  *Agosta*, 982 F.3d at 102 (quoting *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013)).  "And in making this determination, 'the courts have consistently emphasized that the ultimate issue is the reasons for *the individual plaintiff's* treatment, not the relative treatment of different *groups* within the workplace.'" *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 120 (S.D.N.Y. 2022) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)) (emphasis in original).

"Title VII does not impose 'a general civility code for the American workplace.'" *McNamara*, 748 F. Supp. 3d at 89 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)); *Russo*, 972 F. Supp. 3d at 447 ("While 'the central statutory purpose [of Title VII was] eradicating discrimination in employment, Title VII does not set forth a general civility code for the American workplace.'" (quoting *Redd v. New York Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012))).  Examples of conduct prohibited by Title VII include: "sexual assaults; [other] physical contact[, whether amorous or hostile, for which there is no consent express or implied]; uninvited sexual solicitations; intimidating words or acts; [and] obscene language or gestures." *Redd*, 678 F.3d at 177 (citations omitted) (alterations in original).  Conduct that does not fall under Title VII's protection include "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers," *see id.*, as well as "rudeness and excessive criticism of a plaintiff or her work." *Saraceni v. Retting*, 726 F. Supp. 3d 101, 122 (N.D.N.Y. 2024) (citing *Littlejohn*, 795 F.3d at 321).

Here, Plaintiff's opposition does not even recount the necessary elements for a hostile work environment claim, let alone apply those standards to the instant case.  Dkt. No. 45 at 5-8.  Nonetheless, reviewing the facts in the light most favorable to Plaintiff, she still fails to offer sufficient evidence to create a dispute of material fact that might warrant denial of Defendants'

motion. The vast majority of Plaintiff's allegations amount to the sort of conduct that Title VII does not protect, even when construing the record in the light most favorable to her. For instance, Plaintiff alleges that Mr. Mass frequently "glared at [her] in a menacing way," "looked very upset," looked at Plaintiff with an "angry intimidating stare and scowl," or otherwise exhibited an "angry" demeanor causing Plaintiff to feel intimidated given his physical size, stature, and personality; that he "micromanage[d] her work schedule"; that Mr. Mass excluded Plaintiff from work meetings; and that Mr. Mass made improper sexual insinuations and innuendos when interacting with Plaintiff and the IT technician. Dkt. No. 45-2 at 5-6, 8-12, 14-16.

Courts have frequently found similar allegations insufficient to defeat a motion for summary judgment. *See, e.g.*, *Littlejohn*, 795 F.3d at 321 (finding allegations that supervisor made negative statement about the plaintiff to others, being impatient and using harsh tones, increasing the plaintiff's schedule, and wrongfully reprimanding the plaintiff did not amount to a hostile work environment); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (rejecting claims of wrongful exclusion from meetings, excessive criticism of her work, refusal to answer work-related questions, imposition of arbitrary duties, and sending rude emails sufficient to establish a hostile work environment); *Redd*, 678 F.3d at 177 ("[V]ulgar banter, tinged with sexual innuendo" are insufficient to satisfy the standard); *Garcia v. N.Y.C. Health & Hosps. Corp.*, No. 19-CV-997 (PAE), 2019 WL 6878729, at *7 (S.D.N.Y. Dec. 17, 2019) (finding no hostile work environment where supervisor yelled at the plaintiff multiple times and called him a slur); *Kenny v. Catholic Charities Cmty. Servs. Archdiocese of New York*, 20-CV-3269 (PAE) (RWL), 2023 WL 1993332, at *21 (S.D.N.Y. Feb. 14, 2023) (stating that "a supervisor's rudeness to an employee does not equate to a hostile work environment under Title VII").

Similarly, Plaintiff's alleges that Mr. Mass and Mr. Ragusa both intimidated her on

multiple occasions by interacting with her in close proximity without wearing masks, and that Mr. Mass would slam her doors which "put[] [her] in fear for [her] safety." Dkt. No. 45-1 at 4, 6-7, 11, 14. Apart from the conclusory and unsupported nature of the claims, the allegations "are neutral as to [Plaintiff's] [race and sex]" and Plaintiff "ha[s] pointed to no record evidence supporting the inference that the abovementioned incidents of alleged mistreatment occurred 'because of' any of [her] protected characteristics.'" *Alvarado*, 631 F. Supp. 3d at 120 (quoting *Petrisch v. HSBC Bank USA, Inc.*, No. 07-CV-3303 (KAM) (JMA), 2013 WL 1316712, at *13 (E.D.N.Y. Mar. 28, 2013)). Because it is "axiomatic that to prevail on a claim of hostile work environment based on [protected status], the plaintiff must establish that the abuse was based on her [protected status]," Plaintiff's failure to do so here warrants summary judgment in Defendants' favor. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010); *see also Small v. New York City Dep't of Educ.*, 650 F. Supp. 3d 89 102 (S.D.N.Y. 2023) (rejecting hostile work environment claim where the plaintiff failed to establish that the conduct exhibited towards him was based on a protected characteristic); *Conklin v. U.S. Immigr. & Customs Enf't*, 661 F. Supp. 3d 239, 275 (S.D.N.Y. 2023) ("Mistreatment, however severe, does not constitute a Title VII violation without evidence that Plaintiff's protected characteristic was the reason for the treatment.").

Accordingly, Defendants are entitled to summary judgment, and their motion is granted on Plaintiff's Title VII hostile work environment claim.

## IX.    <u>Conclusion</u>

Accordingly, for the reasons set forth above, the Court grants Defendants' motion for summary judgment in its entirety.  The Clerk of the Court is respectfully ordered to enter judgment in favor of Defendants and close this case.

Dated:        Brooklyn, New York            **SO ORDERED.**
              September 19, 2025

                                         *   /s/ Joseph A. Marutollo    *
                                         JOSEPH A. MARUTOLLO
                                         United States Magistrate Judge